## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CIRCUITO CERRADO, INC,** | : | |
| **Plaintiff,** | : | |
| v. | : | **CIVIL ACTION NO. 10-4343** |
| | : | |
| **NED T. KATURAN, et. al.,** | : | |
| **Defendants.** | : | |
| | : | |

**RUFE, J.**                                                                              **September 6, 2011**

Pending before the Court are Defendants' Motions to Dismiss Plaintiff's Amended

Complaint for failure to state a claim upon which relief may be granted.  For the reasons set forth

herein, Defendants' Motions are denied.

## Factual Background[1]

Plaintiff's Amended Complaint alleges that Plaintiff entered into a contract giving it

exclusive, nationwide television distribution rights to the CONCACAF World Cup Qualifier

Tournament, including the Honduras versus Trinidad and Tobago telecast, which aired on

September 5, 2009 ("the Program").[2]  Pursuant to its contractual right to distribute the program,

Plaintiff entered into sublicensing contracts, allowing entities such as hotels, bars, restaurants and

taverns to purchase the rights to publicly exhibit the Program to its customers.[3]

Plaintiff alleges that Defendants Ned Katuran and Telford Kat, Inc. owned, operated,

---

[1] For the purposes of this motion to dismiss, Plaintiff's factual allegations must be accepted as true.  ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[2] Am. Compl. ¶ 10.

[3] Am. Compl. ¶ 11.

licensed, controlled or managed the commercial establishment doing business as Cheers & Beers

(formerly known as La Herradura), located at 146 N. Main Street, Telford, Pennsylvania.[4]

Plaintiff alleges that Defendants knew that they were not authorized to exhibit the Program, but

unlawfully and willfully intercepted the Program and exhibited it at Cheers & Beers for purposes

of direct or indirect commercial advantage or financial gain.[5]

   Plaintiff brings claims for violation of 47 U.S.C. § 605 and/or 47 U.S.C.§ 553, and a

state law claim for conversion.

## Standard of Review

   Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain

statement" does not possess enough substance to show that plaintiff is entitled to relief.[6]  In

determining whether a motion to dismiss is appropriate the court must consider those facts

alleged in the complaint, accepting the allegations as true and drawing all logical inferences in

favor of the non-moving party.[7]  Courts are not bound to accept as true legal conclusions couched

as factual allegations.[8]  Something more than a mere *possibility* of a claim must be alleged; the

plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."[9]  The

---

[4] Am. Comp. ¶¶ 6 and 8.

[5] Am. Compl. ¶ 13.

[6] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[7] ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[8] Twombly, 550 U.S. at 555, 564.

[9] Id. at 570.

Complaint must set forth direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.[10]  The court has no duty to "conjure up unpleaded facts that might turn a frivolous action . . .  into a substantial one."[11]

## Discussion

First, Defendants argue that the failure to allege how the broadcast was being distributed is fatal to Counts I and II of Plaintiff's complaint.  Defendants note that Plaintiff has alleged in Count I that Defendants are liable for violations of 47 U.S.C. § 605, which prohibits the interception of satellite or radio communications through the air, and has alleged in Count II that Defendants are liable for violations of 47 U.S.C. § 553 (Count II), which prohibits interception of a communication over a cable network.  Defendant argues that because it can only be held liable under one of these statutes, and Plaintiff does not specifically allege whether the broadcast allegedly intercepted was an airborne or wire-borne communication at the time of interception, the allegations in the complaint are inadequate to state a claim under either statute.[12]

The Court finds that Defendants' reliance on Joe Hand Promotions is misplaced, because in that case the plaintiff pled only a violation of § 605, and the court could not determine from the pleadings whether § 605 or § 553 afforded the plaintiff a cause of action.  In contrast, in this case Plaintiff has alleged violations of § 605 and § 553 as alternative grounds for relief.[13]  Therefore,

---

[10] Id. at 562.

[11] Id. (citing McGregor v. Indus. Excess Landfill, Inc., 856 F.2d. 39, 42-43 (6th Cir. 1988)).

[12] Citing Joe Hand Promotions, Inc. v. Rennard Street Enterprises, Inc., 954 F. Supp. 1046 (E.D. Pa. 1997).

[13] Although the Third Circuit instructs us that Plaintiff cannot recover under both § 605 and § 553 (TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001), Plaintiff is permitted to plead alternative theories of liability for purposes of discovery.  Fed. R. Civ. P. 8(d)(2); J & J Sports Prod. Inc. v. 4326 Kurz, LTD, No. 07-3850, 2008 WL 4630508, at *3 (E.D. Pa. Oct. 17, 2008).

although Plaintiff did not allege whether the communication was being transmitted by wire or over the air at the time of its interception, this is not fatal to the claim.  The Court can infer that, at the time of filing, Plaintiff was unable to ascertain how Defendants intercepted the broadcast, and therefore could not specifically allege whether it was intercepted from the air or from cables. However, Plaintiff has alleged that it had an exclusive contract to distribute the Program, that it entered into subcontracts with various entities authorizing them to publicly show the Program, that Defendants did not have such authorization and knew they were unauthorized to show the Program, and that Defendants nevertheless willfully intercepted and showed the Program to patrons.[14]  The Court finds Plaintiff has adequately put Defendants on notice that it is pursuing a claim for the illegal interception and publication of the Program for commercial advantage, and Plaintiff is entitled to discovery to determine precisely how the signal was intercepted and which statute is applicable.[15]

Second, Defendant Ned Katuran moves to dismiss the claims against him as an individual, arguing that he did not operate or otherwise control the management of Cheers & Beers or La Herradura.  He argues that he cannot be held individually liable under § 605 and § 553 unless he had the right and ability to supervise the alleged violations, exercised control over those activities, and had a direct financial interest.[16]  As evidence that he did not exercise such control, he points to a lease agreement, under which La Herradura leased the property at 146 N. Main Street, Telford,

---

[14] J & J Sports, 2008 WL 4630508 at *4.

[15] J & J Sports, 2008 WL 4630508 at *3.

[16] Citing J & J Sports Prod., Inc. v. 291 Bar and Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009).

Pennsylvania from Katuran for a period of five years, beginning March 1, 2008.[17]  However, as Plaintiff did not reference or rely upon the lease agreement in its Amended Complaint, the Court may not consider it at this stage.[18]

The Court agrees that Plaintiff will need to prove certain facts to establish individual liability at trial, but at the pleading stage Plaintiff need only *allege* these elements.  Plaintiff has done so here, and the Court must accept the alleged facts as true for the purposes of this Motion. The Court finds that Plaintiff's Amended Complaint is legally sufficient to state a claim against Katuran individually.

---

[17] The Court notes that the lease agreement between Katuran and La Herradura tells the Court little about the relationship between those two entities, and nothing about the degree of control Katuran had over the property's management or the interception of the broadcast, or his financial interest in the broadcast.

[18] See Lum v. Bank of Am., 361 F.3d. 217, 222 n.3 (3d Cir. 2004) (in deciding a 12(b)(6) motion to dismiss, a court may consider exhibits attached to the complaint and documents that form the basis of the claim; a document forms the basis of the claim if it is integral to or explicitly relied upon in the complaint); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").